UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JAMES W. MYART, JR., | § § | No. SA:16–CV–455–DAE (lead case) |
| Plaintiff, | § § | |
| vs. | § § § | No. SA: 5:16–CV–736–DAE (member case) |
| IVY TAYLOR, in her official capacity as Mayor of the City of San Antonio, SHERYL SCULLEY, individually and in her official capacity as City Manager of the City of San Antonio, WILLIAM McMANUS, individually and in his official capacity, ERIK WALSH, individual and in his official capacity, MARTHA SEPEDA, individually and in her official capacity as city attorney, TROY ELLIOTT, individually and in his official capacity as Finance Director, DEBRA OJO, individually and in her official capacity as Assistant Finance Director, THE CITY OF SAN ANTONIO, OFFICERS JOHN DOE 1–6, RYAN McFARLAND, ADAM STALKER, MICHAEL BAGGETT, GILBERT GONZALEZ, ASHLEA BRUSTER, GEORGE MORALES, CHARLES McCATHERY, ART GARCIA, R. MOYNIHAN and M. MELTON, individually and in their official capacity, NIX HOSPITAL, PROSPECT MEDICAL HOLDING GROUP, P. QUARDINIO, | § § § § § § § § § § § § § § § § § § § § § § § § § § § | No. SA: 5:16–CV–819–DAE (member case)  No. SA: 5:16–CV–824–DAE (member case) |

1

ARMANDO GONZALEZ, §
individually and in his official capacity, §
and PAUL TOVAR, individually and in §
his official capacity, §
§
    Defendants. §

## ORDER GRANTING IN PART DEFENDANTS' APPLICATION FOR A PRELIMINARY INJUNCTION

    Before the Court is an Application for a Temporary Restraining Order and Preliminary Injunction and Supplemental Motion for a Temporary Restraining Order and Preliminary Injunction filed by Defendants City of San Antonio, Ivy Taylor, Sheryl Sculley, William McManus, Martha Sepeda, Officers Ryan McFarland, Michael Baggett, Gilbert Gonzalez, and Ashlea Bruster (collectively, "Moving Defendants") (Dkts. ## 67, 79). Defendants seek to enjoin Plaintiff James Myart from threatening, harassing, or verbally abusing any of the named Defendants in this case. (Dkt. # 67 at 9.) The Supplemental Motion also seeks to enjoin Mr. Myart from entering various City premises or personally serving any legal documents on any of the Defendants or other City employees. (Dkt. # 79 at 4.)

    The Court held a hearing on the matters on September 23, 2016. Mr. James Myart, Jr. appeared on behalf of himself.[1] Mr. Mark Ralls, Esq., appeared

---

[1] Importantly, Mr. Myart was a practicing attorney for many years before surrendering his bar card in lieu of disbarment in 2008.

2

on behalf of every Defendant except for Adam Stalker. Mr. Alberto Lopez, Esq., appeared on behalf of Adam Stalker.

The Court heard testimony at the hearing by Mr. Arnoldo Garcia, the claims manager for the City of San Antonio's Risk Management Division of the Finance Department ("Risk Management"); Mr. Paul Tovar, a claims adjuster with the City of San Antonio; and Sandra Ojo, the Risk Manager and Finance Director. Mr. Myart cross-examined each witness. Mr. Myart called Attorney Mark Rawls and Doctor Leo Edwards to testify, and called Attorney Albert Lopez as a character witness.

After careful consideration of Defendants' motions, and in light of the testimony at the hearing, the Court, for the reasons that follow, **GRANTS IN PART AND DENIES IN PART** each of the Motions for Preliminary Injunctions (Dkts. ## 67, 79).

BACKGROUND

As detailed in this Court's September 2, 2016 order consolidating three cases into the above-numbered lead case, Mr. Myart has brought eight specific claims against the Defendants in connection with various instances of alleged police brutality, use of force by officers at Nix Hospital, and the denial of complaints filed with Risk Management. (Dkt. # 47.) These claims include violations of his civil rights, pursuant to 42 U.S.C. § 1983; failure to implement

appropriate policies, customs, and practices in violation of § 1983; use of excessive force, in violation of § 1983; negligence under the Texas Tort Claims Act, ("TTCA") Tex. Civ. Prac. & Rem. Code § 101.001 et seq.; negligent supervision under the TTCA; common law assault; and official oppression, in violation of the Texas Penal Code. (See id. at 5–6.) According to the instant Motion, Mr. Myart filed his first lawsuit in this Court after his claim was denied by the Risk Management Office. (Dkt. # 67 at 3.)

The Moving Defendants' motion documents various situations where Mr. Myart has disrupted the activities of the City of San Antonio's Risk Management Division. (See Dkt. # 67.) The instant motion focuses on Mr. Myart's actions towards Arnoldo Garcia, the Claims Manager for Risk Management, and Debra Ojo, the Risk Manager and Finance Director of the same division. (Id. at 3–4.)

Mr. Garcia states that since the beginning of May, soon after Mr. Myart's first claim was denied, Mr. Myart has called him at least forty times, calling him various racial epithets, using profane language, and on one occasion, threatening to come to the Risk Management offices and break out all the windows if he was not allowed in to speak to Ms. Ojo. ("Garcia Decl.," Dkt. # 67, Ex. A at 2.) At the hearing, Mr. Garcia testified that after this incident, and as a direct result of Mr. Myart's behavior, electronic locks were installed on the doors to the offices

on the 18th Floor of the Frost Tower.  Mr. Garcia stated both in his affidavit and during the hearing that he has met with Mr. Myart at least four times, and that on each occasion, Mr. Myart has been confrontational, demeaning, and used various racial slurs against him.  (Id.)  Mr. Garcia testified that Mr. Myart's behavior has disrupted the functioning of the Risk Management Office; each time an incident occurs, the employees of the Office must meet and write memoranda documenting the incident, which prevents them from completing official job duties.

        Ms. Ojo states that after Mr. Myart's first claim was denied, she has received phone calls from Mr. Myart using profanity and offensive language.  ("Ojo Decl. 1," Dkt. # 67, Ex. B at 2.)  According to Ms. Ojo, Mr. Myart left her a phone message stating he was "the 'big bad Myart' and that he knew [Ms. Ojo] was afraid of him," and sent her an e-mail calling her a pig and threatening that she would "pay."  (Id.)  Ms. Ojo also states that on September 20, 2016, she was confronted by Mr. Myart, who was sitting outside the doors of the room where an Audit Committee meeting was about to take place.  ("Ojo Decl. 2," Dkt. # 79, Ex. B, at 2.)  She states that Mr. Myart, who was flanked by two Security Officers, began to stand up when he saw her, but sat down when instructed by the Security Officers.  (Id.)  At the hearing, she testified that if the Officers had not been there, she feared that Mr. Myart would have hit her.  Ms. Ojo's affidavit states that as she walked by, Mr. Myart loudly called her a "bitch," a "white bitch," and said she was

"nothing but a white woman." (Id.)  At the hearing, Ms. Ojo testified that for the remainder of the day, she was unable to accomplish any work.  She also stated she is afraid Mr. Myart might kill her.

Ms. Ojo states that she is afraid to answer phone calls on her city phone when she does not recognize the phone number, which has caused her to miss at least one important call.  (Ojo Decl. 1 at 3.)  Ms. Ojo also states she is very concerned about her personal safety, and will not leave the Risk Management without an escort if she believes Mr. Myart is in the vicinity.  (Id.; Ojo Decl. 2 at 2.)  Further, Ms. Ojo states Mr. Myart's conduct has delayed the Risk Management office's handling of new claims and the evaluation and resolution of existing claims (Ojo Decl. 1 at 2), and that they have had a direct and detrimental impact on her personal productivity (Ojo Decl. 2 at 2).  Likewise, Mr. Garcia states Mr. Myart's behavior has been disruptive to the operations of Risk Management and delayed the review and processing of claims.  (Garcia Decl. at 3.)

The Moving Defendants include video footage of an encounter between City officials and Mr. Myart.[2]  The first was videotaped on the cell phone of Risk Management employee Paul Tovar and authenticated by the affidavits of

---

[2] The Court did not consider additional videos attached as exhibits to the Supplemental Motion.  The videos were attested to by John Peterek (Dkt. # 79, Ex. B) and Jerry Musquiz (Id., Ex. C).  The City of San Antonio did not bring these individuals to testify at the hearing on the Preliminary Injunction, and Mr. Myart accordingly did not have the opportunity to cross-examine them.

6

Mr. Garcia and Ms. Ojo, all of whom testified at the hearing. ("Video 1," Dkt. # 67, Ex. A-1; see also Garcia Decl. at 2; Ojo Decl. 1 at 2.) The video opens with Mr. Myart sitting in the City Finance offices, surrounded by three EMTs who are taking his vital signs. (Video 1; Garcia Decl. at 2.) In the video, Mr. Myart refuses to leave the office until speaking with a lieutenant, whom the Moving Defendants identify as Troy Elliott, the Director of Finance. (Video 1; Dkt. # 67 at 5.) Throughout the video, Mr. Myart uses racial slurs and other profane language against Ms. Ojo and Mr. Tovar. (See Video 1.) Mr. Garcia testified at the hearing that he was called from the Risk Management Office to the Finance Office during the incident. He stated that eventually, Mr. Myart fell on the floor with a diabetic attack and was taken out on a stretcher by EMTs. Mr. Garcia states Mr. Myart ultimately walked out of the ambulance. Mr. Garcia states this episode took approximately three hours from his morning and further disrupted the operations of the Finance Department.

  Mr. Tovar testified at the hearing regarding both the incident at the Riverview Towers and his various contacts with Mr. Myart. Mr. Tovar testified that he has had some civil conversations with Mr. Myart, but that Mr. Myart often becomes angry and unpredictable. Likewise, Mr. Tovar said he is not always afraid of Mr. Myart but believes Mr. Myart's conduct could escalate from verbal to

physical.  Mr. Tovar also stated that Mr. Myart's conduct and subsequent documentation of his conduct has taken time away from his work.

The City has included as an exhibit phone records collected in the regular course of business of the City's Information Technology Department and attested to by Diana Gonzalez, custodian of the records of the Phone Call Logs for the Department.  ("Phone Logs," Dkt. # 67, Ex. C.)  Between February 1, 2016 and August 29, 2016, the city has received 626 phone calls from the number (210) 330-2658 (id. at 22–35); 1,034 phone calls from the number (830) 469-5155 (id. at 37–59); and 181 phone calls from the number (210) 689-3908 (id. at 61–65).  According to the Defendants, each of these phone numbers is known to belong to Mr. Myart  (Dkt. # 67 at 6.)

Mr. Myart's doctor, Doctor Leo Edwards, testified at the hearing as well.  Doctor Edwards testified that he is a Licensed Physician and practices internal medicine; he has been practicing since 1981 and testified that he is Mr. Myart's physician.  During the hearing, Mr. Myart asked Dr. Edwards whether Dr. Edwards thought he had a propensity for violence.  Dr. Edwards stated that he thought Mr. Myart did have a propensity for violence.

The Court concluded the hearing after the testimony of Doctor Edwards, finding that sufficient evidence was presented at the hearing, and closing arguments were unnecessary.

The Moving Defendants state that "[b]ased upon conversations between Mr. Myart and counsel for defendants, the sole reason for Mr. Myart's harassment, threats, insults, racial slurs, and disruptive, overbearing conduct is to attempt to force a settlement of his cases." (Dkt. # 67 at 8.)  The Moving Defendants seek a temporary restraining order and injunction enjoining Mr. Myart from threatening, harassing, or verbally abusing any of the named Defendants in the case, during the pendency of the litigation.  (Id. at 9.)  The Supplemental Motion further seeks to enjoin this conduct with regard to "any future claims or lawsuits filed by Mr. Myart against the City and/or any City Official or employee, during the pendency of the claim or lawsuit." (Dkt. # 79 at 4.)  The Moving Defendants further seek to enjoin Mr. Myart from personally serving any of the defendants with any pleading, discovery, or other legal documents.  (Dkt. # 67 at 10; Dkt. # 79 at 4.)  The Supplemental Motion further seeks to enjoin Mr. Myart from going onto the grounds of the San Antonio City Hall, to the Risk Management Offices located on the 18th Floor of the Frost Bank Tower, or to the City of San Antonio Finance Department Offices located on the 5th Floor of the Riverview Tower building.  (Dkt. # 79 at 4.)

## LEGAL STANDARD

In order to obtain injunctive relief, the moving party must establish: (1) there is a substantial likelihood that the party will prevail on the merits;

(2) there is a substantial threat that irreparable harm will result if the injunction is not granted; (3) the threatened injury to the moving party outweighs whatever damage the proposed injunctive relief would cause the non-moving party; and (4) the granting of the injunction is not adverse to the public interest. Anderson v. Jackson, 556 F.3d 351, 360 (5th Cir. 2009) (quoting Canal Auth. v. Callaway, 489 F.2d 567, 572 (5th Cir. 1974)); Fed. R. Civ. P. 65.

## DISCUSSION

The preliminary inquiry in this case is whether the Court has jurisdiction to address the Moving Defendants' motion as it relates to Plaintiff's conduct in connection with the above-numbered lawsuit, as opposed to the subject of the lawsuit itself. Courts "have inherent power, within certain limits, to control the conduct of the parties who have subjected themselves to the jurisdiction of the courts. Injunctive relief, where warranted, can be a useful tool to aid a court in controlling the conduct of litigants." Lewis v. S.S. Baune, 534 F.2d 1115, 1121 (5th Cir. 1976). The conduct at issue appears, at least at this stage, to be directly related to the instant suit. The individuals Mr. Myart has been contacting are the parties he has sued in this Court, and it appears that the subject of this suit and the subject of Mr. Myart's conduct towards the Defendants in this case is the same. Accordingly, this Court may appropriately exercise ancillary jurisdiction over the matter.

"The First Amendment generally prevents government from proscribing speech, or even expressive conduct, because of disapproval of the ideas expressed." R.A.V. v. City of St. Paul, Minn., 505 U.S. 377, 382 (1992) (internal citations omitted). These free speech protections are particularly strong with regard to prior restraints, or "administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur." Alexander v. United States, 509 U.S. 544, 550 (1993) (quoting M. Nimmer, Nimmer on Freedom of Speech § 4.03, 4–14 (1984)); see Test Masters Ed. Servs., Inc. v. Singh, 428 F.3d 559, 597 (5th Cir. 2005) ("Prior restraints are unconstitutional limitations on free speech except in exceptional circumstances.").

However, "[c]ourts have made a distinction between communication and harassment. . . . The difference is one between free speech and conduct that may be proscribed." Singh, 428 F.3d at 580 (citing Giboney v. Empire Storage & Ice Co., 336 U.S. 490, 503 (1949); R.A.V., 505 U.S. at 389[3]). Accordingly, "courts do have the power to enjoin harassing communication." Singh, 428 F.3d at

---

[3] R.A.V. v. City of St. Paul, the case underlying this distinction in Singh, explains that "the reason why fighting words are categorically excluded from the protection of the First Amendment is not that their content communicates any particular idea, but that their content embodies a particularly intolerable (and socially unnecessary) mode of expressing whatever idea the speaker wishes to convey." R.A.V., 505 U.S. at 393.

580; see also Lewis, 534 F.2d at 1122 ("There is no reason the current harassing conduct of a party in pursuit of a settlement may not be enjoined.").

The Court finds that the Moving Defendants have presented sufficient evidence to demonstrate that Mr. Myart has crossed the line from civil communications with Defendants to harassment in connection with this suit. This harassment has occurred in the form of repetitive telephone calls, threats—either real or perceived—to Defendants' safety, contact with represented parties outside the presence of their attorney, and behavior that has disrupted the daily functioning of the Office of Risk Management, the Finance Department, and City Hall. (Dkts. ## 67, 79.) In certain circumstances, "the traditional standards of injunctive relief . . . do not apply to the issuance of an injunction . . ." Baum v. Blue Moon Ventures, LLC, 513 F.3d 181, 189 (5th Cir. 2008) (finding that a Court, when issuing a pre-filing injunction sua sponte against a vexatious litigant, need not find that the person's actions are causing irreparable injury, nor need they find that there is no adequate remedy at law). Here, the Moving Defendants do not put at issue their likelihood of success on the merits in this case. Rather, Defendants seek only to enjoin Mr. Myart from engaging in certain conduct in connection with prosecution of the instant lawsuit. Accordingly, the Court finds that the Defendants have submitted sufficient evidence and testimony in support of their Motion. While this does not satisfy the traditional standard requiring the moving party to show a

likelihood of success on the merits of their case, the Moving Defendants have demonstrated a need for an injunction in connection with this case. The Court will construe this as satisfying the first criterion for the issuance of a preliminary injunction. See Anderson, 556 F.3d at 360.

This harassment appears to be causing psychological harm and fear to various Defendants. The Moving Defendants state that this harm is irreparable, because there is no adequate remedy, and Mr. Myart has allegedly informed Defense counsel he has no intention to stop contacting the named Defendants. Importantly, Mr. Myart's own doctor, Dr. Edwards, stated during the hearing that he believed Mr. Myart had a propensity for violence. At this stage, the Moving Defendants have demonstrated that they will suffer irreparable harm in the absence of relief, satisfying the second criterion for the issuance of a preliminary injunction. See Anderson, 556 F.3d at 360.

Importantly, enjoining Mr. Myart from harassing the Defendants named in this lawsuit does not prevent him from effectively prosecuting this case, communicating with Defense counsel, or pursuing his claims in the Risk Management Department. Nor does an injunction prevent Mr. Myart from filing claims with Risk Management through the pendency of this lawsuit. Ms. Ojo testified at the hearing that Mr. Myart may file any additional claims with Risk Management during the pendency of this lawsuit through the City website, which

allows claimants to electronically submit claim forms and upload supporting documentation. Finally, an injunction does not prevent Mr. Myart from expressing his views about the named Defendants, so long as he does so in a manner that does not constitute personal harassment. Accordingly, at this stage, the Moving Defendants have demonstrated that the balance of equities tips in their favor, satisfying the third criterion for the issuance of a preliminary injunction. See Anderson, 556 F.3d at 360.

Finally, Mr. Myart's behavior is currently affecting the citizens of the City of San Antonio, who are unable to see their complaints timely processed by the Office of Risk Management. At this stage, an injunction is in the public interest, satisfying the fourth criterion for the issuance of a preliminary injunction. See Anderson, 556 F.3d at 360.

CONCLUSION

Accordingly, the Court **GRANTS IN PART AND DENIES IN PART** the Moving Defendants' Motion for Preliminary Injunction (Dkt. # 67) and Supplemental Motion for Preliminary Injunction (Dkt. # 79), thereby restraining and enjoining the following conduct by Mr. Myart:

1. Mr. Myart is enjoined from contacting the named Defendants regarding any matter currently addressed in the instant suit, for the pendency of the lawsuit;

2. Mr. Myart is enjoined from threatening or harassing the named Defendants in this case for the pendency of the lawsuit;

3. Mr. Myart is enjoined from entering City Hall, the Risk Management Offices on the 18th Floor of the Frost Bank Building, and the Finance Department Offices on the 5th Floor of the Riverview Tower building, for the pendency of the lawsuit;

4. Mr. Myart is enjoined from calling City Hall, the Risk Management Offices, and the Finance Department for the pendency of the lawsuit; and

5. Mr. Myart is prohibited from personally serving any documents related to this case on any named Defendant represented by counsel for the pendency of the lawsuit.

Failure to abide by the terms of this preliminary injunction could result in a finding that Mr. Myart is in civil or criminal contempt of this Court's order. In re Bradley, 588 F.3d 254, 263 (5th Cir. 2009).

Pursuant to Rule 65(c), the Moving Defendants are **ORDERED** to post bond in the amount of $1,000.00, as security to pay Mr. Myart's damages in the event he was wrongfully enjoined. Fed. R. Civ. P. 65(c). The injunction will become effective immediately after bond is posted.

**IT IS SO ORDERED.**

**DATED:** San Antonio, Texas, September 26, 2016.

_____
David Alan Ezra
Senior United States Distict Judge